# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9951 | **DATE** | 1/10/2003 |
| **CASE TITLE** | Czapko vs. Lakeside Building Maintenance, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Ruling held. **ENTER MEMORANDUM OPINION:** Defendant's motion (Doc 21-1) for summary judgment is granted. All other pending motions are moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number | |
| | Notices mailed by judge's staff. | | JAN 1 3 2003 | | |
| | Notified counsel by telephone. | | date docketed | | |
| ✓ | Docketing to mail notices. | | | | 38 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| | SCT courtroom deputy's initials | 03 JAN 10 PM 2:09 | JAN 1 3 2003 date mailed notice | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WLODZIMIERZ CZAPKO, )
)
Plaintiff, )
)
vs. ) 01 C 9951
)
LAKESIDE BUILDING MAINTENANCE, )
INC., )
)
Defendant. )

DOCKETED
JAN 1 3 2003

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter is before the court on Defendant Lakeside Building Maintenance, Inc.'s ("Lakeside") motion for summary judgment. For the reasons stated below, we grant the motion for summary judgment.

## BACKGROUND

Plaintiff Wlodzimierz Czapko ("Czapko") began working as a day porter for Lakeside in December of 1998. Czapko was sixty-two years of age at that time. His responsibilities involved general maintenance of an office building located at 500 Lake Cook Road ("500 building"). Between May 1999 and September 1999 Czapko was supervised by Roberta Jurek ("Jurek"). Jurek repeatedly reprimanded Czapko for poor

performance and violations of Lakeside employment policies. Lakeside claims that Czapko was insubordinate, that he called Jurek a liar, and on one occasion threw a reprimand back at her. Lakeside also claims that Czapko failed to fill paper towel dispensers that were empty after being told to do so repeatedly. In addition, Lakeside contends that Czapko failed to pick up a light replacement list from a tenant and did not replace light bulbs after repeatedly being told to do so. According to Lakeside, Czapko also violated Lakeside work policies by not punching in and out, by not keeping his work radio turned up so that he could be contacted, and by playing a personal radio during work hours. Finally, Lakeside contends that Czapko refused to respond to a radio call from Jurek after being ordered to immediately come and see her. Lakeside's client at the 500 building, Hines Property Management Company ("Hines"), made several complaints to Lakeside about Czapko's performance. In October 1999 Hines requested that Czapko be removed and Lakeside complied with the request and terminated Czapko. Czapko claims that Lakeside discriminated against him because of his age in violation of the Age Discrimination in Employment Act ("ADEA"). 29 U.S.C. § 621 *et seq*.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole in a light most favorable to the non-moving party

and draw all reasonable inferences that favor the nonmoving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

The ADEA precludes employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." 29 U.S.C. § 623(a)(1). In an ADEA case, an employee can defeat a summary judgment motion utilizing the direct method of proof or by utilizing the indirect burden-shifting approach defined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-03 (1973). *Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 875 (7th Cir. 2002).

### I. Direct Method of Proof

To defeat a motion for summary judgment in an ADEA case under the direct method of proof, a plaintiff "must show either an acknowledgment of discriminatory intent by the defendant or circumstantial evidence that provides the basis for an inference of intentional discrimination." *Gorence v. Eagle Food Centers, Inc.*, 242 F.3d 759, 762 (7th Cir. 2001). The evidence of bigotry must be directly linked to the adverse employment action and the evidence must show specifically that those who made the adverse decision or those that provided input for the adverse decision possessed an unlawful discriminatory intent. *Id.*

Czapko claims that there were three statements made to him that are direct evidence of discriminatory intent and are sufficient to defeat the summary judgment motion under the direct method of proof. According to Czapko, Jurek called him dumb, old, and stupid. Czapko claims that the statement was made when there was the dispute over the light replacement list. Czapko does not directly connect the statement to the reprimand issued by Jurek or to any other adverse employment actions taken against Czapko. Czapko also claims that Jurek said to him "You are maybe too old. Maybe you don't want to work . . . Maybe you are too old." Czapko cannot recall the date that Jurek made the statement and Czapko does not directly connect the statement to an adverse employment action taken against him. Finally, Czapko claims that when he asked Jurek why she was giving him such a hard time at work Jurek replied "because they want to fire you." First of all this statement indicates that it is Jurek's superiors and not Jurek who held an unlawful discriminatory intent and, by disclosing such confidential information, the statement indicates that Jurek was sympathetic towards Czapko. This premise is inconsistent with the other two statements that are presented to show that Jurek was biased. Also, the phrase "they want to fire you" does not mention or allude to Czapko's age and is not evidence of an intention to discriminate on the basis of age.

Czapko admits that Jim McCoy ("McCoy"), Executive Vice President for Lakeside, and Jesse Espino ("Espino"), Lakeside's Operations Manager, ultimately decided to terminate Czapko and that Jurek was transferred from her supervisor position before the decision to terminate Czapko. Lakeside claims that the statements would be evidence only of Jurek's intent to discriminate and, since she did not make the decision to terminate Czapko, the statements are not properly considered under the direct method of proof. Czapko argues that Jurek's input prior to her transfer contributed to the decision to terminate Czapko. However, Czapko has not presented any evidence that shows that Jurek influenced the decision to terminate Czapko, and Espino and McCoy claim that the main basis for their decision to terminate Czapko was the complaints and removal request from Hines. *See Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771 (7th Cir. 2002) (stating that, under the direct method of proof, a court will not presume that a party gave input that influenced the adverse employment decision). Therefore, Czapko has not provided sufficient evidence to proceed under the direct method of proof and he must turn to the indirect approach.

## II. Indirect Approach

To defeat a motion for summary judgment in an ADEA case under the indirect approach, the plaintiff must first establish a *prima facie* case by showing that: 1) he is a member of a protected class, 2) he was meeting his employer's legitimate work

related expectations, 3) he "was subject to an adverse employment action," and 4) he was treated differently than similarly situated employees outside the protected class. *Krchnavy*, 294 F.3d at 875. If a plaintiff establishes a *prima facie* case, then the burden shifts to the employer to provide a "legitimate nondiscriminatory reason" for the adverse employment action. *Id.* at 876. If such a reason is supplied then the employee must show that the reason is merely a pretext for unlawful discrimination. *Id.* Lakeside concedes that Czapko was a member of a protected class under the ADEA and that the termination of Czapko constituted an adverse employment action.

Lakeside contends that Czapko did not meet Lakeside's legitimate work related expectations. Czapko responds to Lakeside's accusations of poor work performance with a litany of excuses. He claims that he had good reason to be insubordinate because he was being treated unfairly by Jurek. He claims that he called Jurek a liar only after she called him a liar. According to Czapko, he did not always clock in or out because sometimes he did not have access to the time clock and because Lakeside was trying to cheat him out of overtime. In regards to not keeping his work radio turned on, Czapko asserts that the radio's reception is poor in the basements and sometimes he would turn down the volume when working in offices out of courtesy to the office workers. Czapko admits that on one occasion he refused to immediately come and see Jurek when ordered to do so by radio, but he claims that he was unable to respond

immediately because he was replacing a transformer and it would have been unsafe to leave the job unfinished. Czapko admits that he routinely did not turn in his uniforms as required. However, he claims that, since he has a problem with his elbows and it was sometimes cold at work, he had some sort of agreement with Lakeside that he did not have to follow the uniform rules. In regards to the paper towels, Czapko claims that there was some confusion due to different key sizes for different containers and he did not have the proper keys to open the towel containers. He also claims that the containers were not empty as Lakeside and Hines contend. In regards to the light replacement list, Czapko claims that the normal routine was to check all lights each day rather than referring to a light list, and he was unable to find the light list because it was left in a different location than usual. Czapko admits that he received multiple written reprimands from Lakeside and that tenants at the 500 building complained about his work performance on several occasions. Czapko claims, however, that the reprimands were unwarranted. He claims that some of his performance problems that were the subject of the Hines complaints were Lakeside's fault and that the rest of the Hines complaints alleging deficiencies in his work performance were lies. Predictably, Lakeside scoffs at these excuses and argues that they are without merit. However, this summary judgment motion is not a trial of the merits. Czapko has his version of the past events and he is entitled to present it before a trier of fact.

We note that Lakeside offers as evidence the fact that Hines complained about Czapko's performance and the fact that Czapko received reprimands. Czapko contests some of those matters. However, after weeding out all of the above disputed accusations we are still left with admitted instances of improper conduct by Czapko. First, Czapko admits that he was repeatedly told to pick up the light replacement list from a tenant and that he did not pick up the list. His excuse that the list was on a different floor than usual is insufficient. With additional effort he could have located the list. He admits in his 56.1(b) response that he decided that he did not need the light list because he checked all the lights each day anyway. The question is not whether the light replacement list was necessary for him to do his job. The question is whether he followed the order given to him by his supervisor and after only a minimal effort to do so, Czapko decided on his own that he did not need to comply with that order. Thus, Czapko failed to follow his supervisor's explicit instructions.

Czapko also admits to conduct that constitutes insubordination. In his 56.1(b) response to Lakeside's statements of facts, Czapko does not deny and thereby admits that he told Jurek that he felt like he was in prison and that he should be able to do his work when he wanted. Regardless of whether he thought he was being treated unfairly, telling a supervisor that he should be allowed to do what he wants to do when he feels like it is disobedient and shows disrespect for the supervisor's authority. Czapko also

does not deny in his 56.1(b) response that he refused to sign a reprimand and threw it back at Jurek. Such conduct is clearly insubordinate as well.

Czapko also admits that he did not follow Lakeside work policies even though he knew of the policies. Czapko admitted in his deposition that sometimes it was his own fault that he did not punch in as required and he admits that he was warned about his failing to punch in. Czapko also does not deny in his 56.1(b) statement that he knew that Lakeside work policies prohibited the playing of personal radios at work and he admits that he played a personal radio at work. In summation, Czapko admits that he did not follow orders given to him by his supervisor, that he was insubordinate to his supervisor, and that he did not follow work policies. Thus, even if we were to accept Czapko's excuses, it is clear that Czapko did not meet the legitimate expectations of Lakeside and no reasonable jury could find in his favor.

## CONCLUSION

Based on the foregoing analysis we grant the motion for summary judgment. All other pending motions are rendered moot.

_____
Charles P. Kocoras
Chief Judge
United States District Court

Dated: January 10, 2003